UNITED STATES CONSTRUCTORS & CONSULTANTS, INC., *v.*
CUYAHOGA METROPOLITAN HOUSING AUTHORITY.

[Cite as United States Constructors & Consultants, Inc.,
v. Cuyahoga Metropolitan Housing Authority (1972),
32 Ohio Misc. 243.]

(No. 908980—Decided September 18, 1972.)

Cuyahoga County Court of Common Pleas.

*Messrs. Kahn, Kleinman, Yanowitz & Arnson, Mr.
Sheldon Berns* and *Mr. Gary D. Greenwald,* for United
States Constructors & Consultants, Inc.
*Mr. Walter C. Kelley, Jr., Mr. Fred J. Livingstone*
and *Messrs. Kelley & McCann,* for Cuyahoga Metropoli-
tan Housing Authority.

SWEENEY, J.  The plaintiff asks this court to declare
that the Cuyahoga Metropolitan Housing Authority
(CMHA), violated R. C. 3735.32 and 3735.36 when they
selected a developer for public housing known as ''Cleve-

land Heights Housing Project." Plaintiff also seeks to restrain the defendant from entering into a contract with said developer, Sanford Construction Company; and an order compelling defendant to award the contract to the plaintiff as the lowest bidder or, to compel the defendant to reinstate bidding.

The defendant utilized the "Turnkey" method set forth in HUD's "Low-Rent Housing Turnkey Handbook," RHA 7420.1, to have this project developed. The Turnkey method gives the CMHA wide discretion in picking the best proposal and it does not have to award the contract to the lowest bidder.

In June 1972, CMHA advertised certain requirements for the proposed project under the HUD Turnkey method of Federal assistance for low income housing and requested proposals and plans be submitted to CMHA following HUD guidelines and regulations. CMHA specifically stated that the housing plans were not competitive bids and that HUD regulations would be used in awarding this contract based on individual merit. Five proposals were submitted to CMHA, the plaintiff's bid being the lowest.

In July 1972, CMHA awarded this contract to Sanford Construction Company as contractor. This bid was the second lowest, and on August 14, 1972, the plaintiff filed this action.

All five proposals made to CMHA were in compliance with regulations and requirements of HUD Turnkey method. Defendant's selection met with HUD's approval.

The HUD Turnkey method of constructing public housing is fully financed by the Federal Government and HUD will *directly* purchase this project if the local housing authority fails to meet their contractual obligation.

Before this court at the present time are two motions for summary judgment, one for each party to this action. Both parties contend that there is no genuine issue of material fact and that judgment lies as a matter of law.

ARGUMENTS OF LAW:

The defendant contends in its motion for summary judgment that it has authority through R. C. 3735.31 to

provide safe and sanitary housing to low income families. This section reads in part,

"(B) . . . . purchase, lease, sell, exchange, transfer, assign or mortgage any property, real or personal, or any interest therein, . . . .

"(C) Borrow money or accept grants or other financial assistance from the Federal Government for or in aid of any housing project within its territorial limits; . . . . comply with such conditions and enter into such mortgages, trust indentures, leases, or agreements as are necessary, convenient, or desirable."

The plaintiff states the federally assisted Turnkey method, whereby the local housing authority contracts with the developer for the purchase of the real property and the housing thereon only after completion of the project, falls within the authorization given to housing authorities by R. C. 3735.31, to purchase real property and to accept and comply with Federal assistance. Under Turnkey, CMHA will actually be contracting for the purchase of an existing housing development, rather than for the construction of such, as authorized in R. C. 3735.31(B). Likewise, CMHA is in compliance with the requirements of the Federal Turnkey Program as authorized in R. C. 3735.31(C).

Compliance with the Turnkey program, set forth in the Low-Rent Housing Turnkey Handbook, is mandatory if any housing authority is to receive Turnkey assistance, as broad rulemaking power has been granted HUD to carry out its ends by 42 U. S. Code, Section 1408, formerly Section 8 of the United States Housing Act of 1937. *Lehigh Construction Company* v. *Housing Authority of The City of Orange* (N. J. S. Ct. 1970), 267 A. 2d 41; *Commissioner of Labor & Industries* v. *Lawrence Housing Authority* (Mass. S. Jud. Ct. 1970), 261 N. E. 2d 331; *Thorpe* v. *Housing Authority of The City of Durham* (1969), 393 U. S. 268.

The Turnkey method received further Congressional recognition in Section 2 of The United States Housing and Urban Development Act of 1968, 82 Stat. 476, which declared that in the goal of housing for low income families there must be the fullest utilization of the resources and

capabilities of private enterprise. *Commissioner of Labor & Industries* v. *Lawrence Housing Authority, supra,* at 336.

The plaintiff argues that R. C. 3735.32 and 3735.36, apply to all construction and development by a housing authority and that the Turnkey method violates said sections. Examination of both sections, however, reveals that they in no way set forth the exclusive method by which the housing authority may act and neither limit nor apply to the Turnkey method.

R. C. 3735.32 provides that a housing authority "may" appropriate property and the manner of so appropriating. Though providing the housing authority with a useful and needed power, the statute is certainly not the only method by which the authority may achieve its ends and is inapplicable to the Turnkey method here being utilized.

In conjunction, R. C. 3735.36 provides:

"When a metropolitan housing authority *has acquired* the property necessary for any project, it shall proceed to make plans and specifications for carrying out such project and shall advertise for bids for all work which it desires to have done by contract, . . . . The contract shall be awarded to the lowest and best bidder." (Emphasis added.)

This section, by its terms, requires, among other things, competitive bidding and the award of the contract to the lowest and best bidder, but *only* where the housing authority *has acquired* the property necessary for the project. Here, CMHA is not to *acquire* the property and then proceed to develop it, rather it is contracting to purchase a completed development as authorized in R. C. 3735.31(B).

In *Hudson* v. *Dayton Metropolitan Housing Authority,* Case No. 72-119 (Montgomery County Common Pleas, 1972), a defendant housing authority employing the Turnkey method had allegedly violated R. C. 3735.36 by failing to comply with the advertising requirements therein. The court declared that R. C. 3735.36 did not apply to the Turnkey method, as the contract to purchase the completed project *in futuro* did not constitute "having acquired the property" within the meaning of R. C. 3735.36 rather than the

competitive bidding requirement here in issue, the total inapplicability of the statute to a Turnkey project is directly in point. R. C. 3735.36 has not been violated by CMHA's use of the Turnkey method, and the competitive bidding provision therein is not applicable.

In both *Lehigh Construction Company* v. *Housing Authority of The City of Orange, supra,* and *Commissioner of Labor and Industries* v. *Lawrence Housing Authority supra,* the identical issue of whether competitive bidding statutes were applicable to the Turnkey method was decided in the negative. Both courts felt that Turnkey construction was an exception to competitive bidding statutes in view of statutory authorization, similar to R. C. 3735.-31(C), to housing authorities to accept Federal regulations in seeking Federal aid.

Plaintiff argues that the Turnkey method, in violating the competitive bidding provision of R. C. 3735.36, is clearly against public policy, as it fails to secure public contracts at the lowest cost to taxpayers, while promoting collusion, favoritism and fraud. The public interest argument in support of competitive bidding is a valid point. However, the Turnkey program cannot be said to be against public interest merely because it is a different means to the goals of low income housing.

Unlike the competitive bidding provision of R. C. 3735.-36, wherein the housing authority has the property, makes the plans, sets specifications and standards to carry out the project, and merely invites bidding as to cost only, the primary emphasis of the Turnkey method is not cost but the overall plan and standard of the proposed projects that are bid.

"Recognition is given to the thesis that in housing more than any other type of public construction, price should only be one factor and that design and quality should receive prime consideration . . . Comment, Turnkey Public Housing in Wisconsin, 1969 Wisc. L. Rev. 231, 237-38. . . . Undoubtedly, it has its weaknesses deriving from the human factors involved. But the competitive bidding statutes, such as N. J. S. A. 40:50-1 and similar statutes in

our sister states, have not proved a cureall for the evils associated with that practice. Undoubtedly, Congress balanced the weaknesses of Turnkey against the potential for collusive bidding and for kindred ills in the competitive bidding process and decided that since Turnkey would speed housing production and promote diversity of design, it was a worthwhile experience in the area of public housing . Such decisions are for lawmakers, not for the courts.'' *Lehigh Construction Company* v. *Housing Authority of The City of Orange, supra* at 46.

*State, ex rel. Kitchen,* v. *Christman* (1972), 31 Ohio St. 2d 64 and *North County Development Corporation* v. *Massena Housing Authority* (1970), 316 N. U. S. 2d 894, cited by plaintiff to support his contention of Turnkey's illegality, are not on point. Both cases were instances wherein the public body had already acquired the property but intended to sell the property to the developer who would construct the improvements and then resell or lease back the completed project to the public body. These cases involve schemes of avoidance and circumvention of statutory requirements. There are no such schemes here and CMHA neither owns the subject property, nor intends to purchase it and then convey it to the developer for future resale. This argument is inapplicable to the instant situation.

The Turnkey method is a valid exercise of HUD's authority under the broad rule making power conferred upon it by 42 U. S. Code, Section 1408, and the regulations set forth in HUD's manual are mandatory and binding upon CMHA in a Turnkey project. Accordingly, *Marino* v. *Town of Ramano* (S. Ct. Rockland County, 1971), 326 N. U. S. 2d 162, 163, states:

''The pre-emption doctrine requires state laws to defer to Federal legislation where either of three elements exist: . . . (3) the enforcement of the state statute presents a substantial conflict with the administration of the Federal program.''

The court concluded that the pre-emption doctrine prevails where valid ''regulations'' enacted by a Federal

agency conflict with state legislation, and that conclusion is herein supported.

CONCLUSION:

In view of the foregoing discussion, the defendant's motion for summary judgment is granted. The court finds that the Cuyahoga Metropolitan Housing Authority is authorized by R. C. 3735.31 to develop low income housing under the Federal Turnkey method of development. The court also finds that R. C. 3735.32 and 3735.36 are not applicable to the construction and development of housing by a metropolitan housing authority under the Federal Turnkey method of development.

The temporary injunction restraining the plaintiff from entering into any contract with Sanford Construction Company for the construction of said Cleveland Heights Housing Project is dismissed.

The plaintiff's motion for summary judgment is overruled.